# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| CASSIDY GRIGGS, individually and on behalf of all others similarly situated,<br><br>v.<br><br>IN DEMAND SERVICES, LLC d/b/a INDEMAND SERVICES, LLC | Case No. 5:22-cv-00175<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, In Demand Services, LLC d/b/a InDemand Services, LLC's ("InDemand") timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout InDemand's organization.

3. As a result, InDemand's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Cassidy Griggs is one such InDemand worker.

5. InDemand could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, InDemand used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. InDemand pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. InDemand made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. InDemand's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. InDemand's failure to pay wages, including proper overtime, for all hours worked to its workers in Arkansas also violates the Minimum Wage Act of the State of Arkansas ("AMWA"), ARK. CODE ANN. § 11-4-201 *et seq.*

11. Griggs brings this lawsuit to recover these unpaid overtime wages and other damages owed by InDemand to her and InDemand's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but InDemand's decision to make its own non-exempt employees workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by InDemand to all these workers, along with the penalties, interest, and other remedies provided by federal and Arkansas law.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because InDemand is headquartered in this District.

**PARTIES**

16. **Plaintiff Cassidy Griggs** is a natural person.

17. Griggs was, at all relevant times, an employee of InDemand.

18. Griggs has worked for InDemand since at least December 2021.

19. Griggs worked for InDemand in Arkansas.

20. Griggs represents at least two groups of similarly situated InDemand workers.

21. Griggs represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of InDemand (including its subsidiaries and alter egos), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Griggs represents a class of similarly situated workers under Arkansas law pursuant to Federal Rule of Civil Procedure 23. This "Arkansas Class" is defined as:

> **All current or former non-exempt employees of InDemand (including its subsidiaries and alter egos) who worked in Arkansas at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23. Throughout this Complaint, the FLSA Collective members and Arkansas Class members are referred to jointly as the "Similarly Situated Workers."

24. **Defendant In Demand Services, LLC d/b/a InDemand Services, LLC ("InDemand")** is a domestic limited liability company.

25. InDemand is headquartered in this District.

26. At all relevant times, one or more of InDemand's ultimate members were citizens of North Carolina.

27. InDemand may be served by service upon its registered agent, **Chandler Wayne Rose, 130 Penmarc Dr., Ste. 112, Raleigh, NC 27603-2470**, or by any other method allowed by law.

28. At all relevant times, InDemand has been doing business under the assumed name, "InDemand Services, LLC."

29. At all relevant times, InDemand has been doing business under the assumed name, "InDemand."

30. InDemand employed and/or jointly employed Griggs and the Similarly Situated Workers.

### COVERAGE UNDER THE FLSA

31. At all relevant times, InDemand was an employer of Griggs within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

32. At all relevant times, InDemand was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

33. InDemand was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

34. During at least the last three years, InDemand has had gross annual sales in excess of $500,000.

35. InDemand was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

36. InDemand employs many workers, including Griggs, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

37. The goods and materials handled, sold, or otherwise worked on by Griggs and other InDemand employees and that have been moved in interstate commerce include, but are not limited to, groceries and apparel, and other consumer goods.

**FACTS**

38. InDemand provides staffing services for store operations, projects, light industrial/warehouse, custodial, and other industries.

39. Many of InDemand's employees are non-exempt hourly and salaried workers.

40. Since at least 2021, InDemand has used timekeeping software and hardware operated and maintained by Kronos.

41. On or about December 11, 2021, Kronos was hacked with ransomware.

42. The Kronos hack interfered with the ability of its customers, including InDemand, to use Kronos's software and hardware to track hours and pay employees.

43. Since the onset of the Kronos hack, InDemand has failed to keep accurate track of the hours that Griggs and Similarly Situated Workers have worked.

44. Instead, InDemand has used various methods to estimate the number of hours Griggs and Similarly Situated Workers work in each pay period.

45. For example, InDemand issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

46. As a result of InDemand's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

47. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

48. Griggs is one of the thousands of employees affected by these pay and timekeeping practices.

49. Instead of paying Griggs for the hours she actually worked (including overtime hours), InDemand simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Griggs's actual hours worked and regular pay rates, in multiple workweeks.

50. In some instances, Griggs was paid portions of the overtime shey worked, but the overtime rate she was paid was not at least 1.5 times her agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

51. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

52. InDemand knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

53. InDemand knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

54. InDemand could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

55. Instead of accurately tracking hours and paying employees their overtime, InDemand decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

56. Even to the extent it did pay some overtime to affected employees, InDemand failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium InDemand did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

57. It was feasible for InDemand to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

58. But it chose not to do that.

59. In other words, InDemand pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

60. Griggs is just one of the many InDemand employees who had to shoulder the burden of this decision by InDemand.

61. Griggs was a non-exempt hourly employee of InDemand.

62. Griggs regularly worked over 40 hours per week for InDemand.

63. Griggs's normal, pre-Kronos hack hours are reflected in InDemand's records.

64. Since the Kronos hack, InDemand has not paid Griggs for her actual hours worked each week.

65. Since the hack took place, InDemand has not been accurately recording the hours worked by Griggs and its other workers.

66. Even when InDemand has issued payment to Griggs for any overtime, the overtime is not calculated based on Griggs's regular rates, as required by federal law.

67. InDemand was aware of the overtime requirements of the FLSA.

68. InDemand nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Griggs.

69. InDemand's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

70. The full overtime wages owed to Griggs and the Similarly Situated Workers became "unpaid" when the work for InDemand was done—that is, on Griggs and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

71. At the time InDemand failed to pay Griggs and the Similarly Situated Workers in full for their overtime hours by their regular paydays, InDemand became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

72. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

73. Even if InDemand made any untimely payment of unpaid wages due and owing to Griggs or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

74. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

75. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to InDemand's acts and omissions resulting in the unpaid wages in the first place.

76. Griggs and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by InDemand under federal and Arkansas law.

### COLLECTIVE ACTION ALLEGATIONS

77. Griggs incorporates all other allegations.

78. Numerous individuals were victimized by InDemand's patterns, practices, and policies, which are in willful violation of the FLSA.

79. Based on her experiences and tenure with InDemand, Griggs is aware that InDemand's illegal practices were imposed on the FLSA Collective.

80. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

81. These employees are victims of InDemand's respective unlawful compensation practices and are similarly situated to Griggs in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

82. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

83. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

84. InDemand's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

85. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

86. Griggs incorporates all other allegations.

87. The illegal practices InDemand imposed on Griggs were likewise imposed on the Arkansas Class members.

88. Numerous other individuals who worked for InDemand were were not properly compensated for all hours worked, as required by Arkansas law.

89. The Arkansas Class is so numerous that joinder of all members of the class is impracticable.

90. InDemand imposed uniform practices and policies on Griggs and the Arkansas Class members regardless of any individualized factors.

91. Based on her experience and tenure with InDemand, as well as coverage of the Kronos hack, Griggs is aware that InDemand's illegal practices were imposed on the Arkansas Class members.

92. Arkansas Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

93. InDemand's failure to pay wages and overtime compensation in accordance with Arkansas law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Arkansas Class members.

94. Griggs's experiences are therefore typical of the experiences of the Arkansas Class members.

95. Griggs has no interest contrary to, or in conflict with, the members of the Arkansas Class. Like each member of the proposed class, Griggs has an interest in obtaining the unpaid wages and other damages owed under the law.

96. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

97. Absent this action, many Arkansas Class members likely will not obtain redress of their injuries and InDemand will reap the unjust benefits of violating Arkansas law.

98. Furthermore, even if some of the Arkansas Class members could afford individual litigation against InDemand, it would be unduly burdensome to the judicial system.

99. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

100. The questions of law and fact common to each of the Arkansas Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.    Whether the Arkansas Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

    b.    Whether InDemand's failure to pay overtime at the rates required by law violated Arkansas's wage and hour laws.

101. Griggs's claims are typical of the Arkansas Class members. Griggs and the Arkansas Class members have all sustained damages arising out of InDemand's illegal and uniform employment policies.

102. Griggs knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

103. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### First Cause of Action—Overtime Violations of the FLSA as to Griggs and the FLSA Collective

104. Griggs incorporates all other allegations.

105. By failing to pay Griggs and the FLSA Collective members overtime at 1.5 times their regular rates, InDemand violated the FLSA. 29 U.S.C. § 207(a).

106. InDemand owes Griggs and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

107. InDemand owes Griggs and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

108. Likewise, InDemand owes Griggs and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

109. InDemand knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

110. Because InDemand knew, or showed reckless disregard for whether, its pay practices violated the FLSA, InDemand owes these wages for at least the past three years.

111. InDemand's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

112. Because InDemand's decision not to pay overtime was not made in good faith, InDemand also owes Griggs and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

113. Accordingly, Griggs and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE AMWA AS TO GRIGGS AND THE ARKANSAS CLASS

114. Griggs incorporates all other allegations.

115. The conduct alleged in this Complaint violates the Minimum Wage Act of the State of Arkansas ("AMWA"), ARK. CODE ANN. § 11-4-201 *et seq.*

116. At all relevant times, InDemand was and is an "employer" within the meaning of the AMWA. ARK. CODE ANN. § 11-4-203(4).

117. At all relevant times, InDemand employed Griggs and all other Arkansas Class Members as "employees" within the meaning of the AMWA. ARK. CODE ANN. § 11-4-203(2)-(3).

118. The AMWA requires an employer like InDemand to pay employees at a rate no less than the minimum wage for each hour worked. ARK. CODE ANN. § 11-4-120.

119. As a result of InDemand' failure to pay Griggs and the Arkansas Class at a rate no less than the minimum wage for all hours worked, InDemand violated the AMWA.

120. The AMWA requires an employer like InDemand to pay overtime to all non-exempt employees. ARK. CODE ANN. § 11-4-211.

121. Griggs and the other Arkansas Class members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked at a rate of no less than 1.5x their regular rate. ARK. CODE ANN. § 11-4-211(a).

122. Within the applicable limitations period, InDemand had a policy and practice of failing to pay proper overtime to the Arkansas Class members for their hours worked in excess of 40 hours per week.

123. As a result of InDemand' failure to pay proper overtime to Griggs and the Arkansas Class members for work performed in excess of 40 hours in a workweek, InDemand violated the AMWA.

124. Likewise, InDemand owes Griggs and the Arkansas members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

125. The AMWA requires an employer like InDemand to make and keep accurate records of the name, address, and occupation of each employee, their rate of pay, and the amount paid to each employee. ARK. CODE ANN. § 11-4-217.

126. Within the applicable limitations period, InDemand had a policy and practice of failing to provide their employees with the wage statements required by the AMWA.

127. As a result of InDemand' failure to provide the wage statements required by the AMWA, InDemand violated the AMWA.

128. Because InDemand willfully failed to pay Griggs and the Arkansas Class their earned wages and overtime compensation, Griggs and the Arkansas Class are entitled to recover liquidated damages.

129. Griggs and the Arkansas Class members are entitled to recover their unpaid wages, liquidated damages, attorneys' fees, costs, penalties, and all other legal and equitable relief provided under the AMWA. ARK. CODE ANN. § 11-4-218(a).

**RELIEF SOUGHT**

Griggs prays for judgment against InDemand as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a class action for the Arkansas law claims;

    c.    For an order finding InDemand liable for violations of federal wage laws with respect to Griggs and all FLSA Collective members covered by this case;

    d.    For an order finding InDemand liable for violations of Arkansas wage laws with respect to Griggs and all Arkansas Class members covered by this case;

e. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Griggs and all FLSA Collective members covered by this case;

f. For a judgment awarding all unpaid wages, liquidated damages, and penalties under Arkansas wage laws to Griggs and all Arkansas Class members covered by this case;

g. For an equitable accounting and restitution of wages due to Griggs and all FLSA Collective and Arkansas Class members members covered by this case;

h. For a judgment awarding attorneys' fees to Griggs and all FLSA Collective and Arkansas Class members covered by this case;

i. For a judgment awarding costs of this action to Griggs and all FLSA Collective and Arkansas Class members covered by this case;

j. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Griggs and all FLSA Collective and Arkansas Class members covered by this case; and

k. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
_____
**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Kimberly De Archangelis, Esq.**
Florida Bar No.: 0025871
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 867-4791
Email: rmorgan@forthepeople.com
kimd@forthepeople.com

**Attorneys for Plaintiff**

By: */s/ Adam A. Smith*
**Adam A. Smith, Esq.**
NC Bar No.: 31798
**RIDDLE & BRANTLEY, LLP**
PO Box 11050
Goldsboro, NC 27532
Telephone: (919) 77809700
Facsimile: (919) 432-1751
Email: AAS@justicecounts.com

**Local Civil Rule 83.1(d) Counsel**